**LaSOCIETE ANONYME des PARFUMS LE GALION, Plaintiff,**

v.

**JEAN PATOU, INC., Defendant.**

**No. 66 Civ. 2667.**

United States District Court,
S. D. New York.

Oct. 17, 1972.

Arthur A. March, New York City, for plaintiff.

Blum, Moscovitz, Friedman, Blum & Kaplan, New York City, for defendant.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

This action is brought under the provisions of 15 U.S.C. § 1124 (1970) barring the importation of goods bearing infringing trademarks. Plaintiff, Le Galion, seeks a declaratory judgment that it is the owner of the trademark "SNOB" and that the acts of the Commissioner of Customs preventing importation of plaintiff's perfumes bearing the name "SNOB" are improper. Le Galion also demands cancellation of defendant's trademark registration for "SNOB" and an accounting of damages. Jurisdiction is conferred on this court by 28 U.S.C. § 1338 (1970).

In 1946, Le Galion, a small French perfumer, adopted and registered the name SNOB for its perfumes in France. Thereafter, Le Galion promoted, distributed and obtained trademark rights to SNOB perfume in many countries in Europe, Africa and South America. Some sales of Le Galion's SNOB were made in the United States during the period of 1948 to 1953 but no application to register the name was filed in this country.

In 1954, a Frenchman named Roig advised Le Galion of possible trademark infringement, claiming to have registered the name SNOB in 1945 in France. After investigation and negotiation, Le Galion purchased all Roig's rights to the SNOB mark. Jean Patou, Inc., a famous perfumer with French and American corporate entities, had also sought the SNOB name from Roig in 1954. Le Galion had no previous knowledge of Patou's interest in the name until the Roig assignment.

Patou registered the name SNOB with the United States Patent Office in 1951. It produced and sold in the United States in a very limited amount a perfume called SNOB since 1950 or 1951, with total sales from 1951 to 1969 of 72 bottles and a gross profit of $100.00.

Seventeen bottles were sold to retail stores between 1969 and 1971. The SNOB line was produced in only ⅓ ounce bottles and the sales were made to well-known retail stores throughout the nation. Although there was testimony that the sales approximated 10 bottles a year since 1950, the sale of only 89 bottles was documented and proved with certainty.

In 1953, Patou deposited the registration of SNOB with the Bureau of Customs thereby blocking the importation of any infringing trademark. In 1955 a shipment of Le Galion's SNOB perfume was barred by the Commissioner of Customs. Immediately, Le Galion sued in this court seeking the same relief as in the instant action. The case was dismissed for lack of prosecution in 1958. In 1965 Le Galion started an action in the Patent Office to cancel Patou's registration of SNOB. This administrative action was dropped in 1967 upon advice of counsel that the present action, commenced in 1966, was the stronger case to pursue. The instant action, however, has not been actively prosecuted while pending in this court.

Le Galion has successfully marketed SNOB perfume throughout the world, except in the United States. Between 1966 and 1969, for instance, its worldwide sales of SNOB came to approximately $1,750,000. Since 1957, Le Galion has imported a SNOB substitute called CUB. A small note inside a box of CUB explains to the purchaser that the CUB bottle contains Le Galion's SNOB perfume.

In perfumery, the development of a new fragrance is less difficult than the discovery of a distinctive, unregistered trademark. Perfumers commonly produce and market limited quantities of a new perfume, after a name has been selected, in order to sustain the validity of its trademark registration. It is also common for perfume companies to have one or more famous names as the bulk of their business while maintaining its lesser known names. Patou, for instance, manufactures JOY perfume, the

most expensive perfume in the world, and it constitutes 90% of its business. Lesser known brands and fragrances are produced in limited quantity with the expectation that they will one day become a fashionable name.

 The issue before us is whether the sale of 89 bottles of SNOB perfume by Patou is a bona-fide use of its trademark. We hold that it is.

The use of a trademark must be "deliberate and continuous" if its owner wishes to reap the benefits of exclusive rights afforded by trademark law. R. Callman, Unfair Competition, Trademarks and Monopolies § 76.2 at 285 (3rd ed. 1969). Le Galion claims that Patou's limited sales is a mere casual and token use of the trademark. We find to the contrary.

The sales of SNOB were effected by Patou upon invoices and orders received from its long-standing customers. Although the sales price was discounted (sometimes at 40%), each sale was profitable and accurate books and records were kept. These facts alone distinguish this case from Merry Hull & Co. v. Hi-Line Co., 243 F.Supp. 45 (S.D. N.Y.1965), relied upon by the plaintiff, where no reportable income was made from sales to relatives, friends and employees. Nothing in this record evidences such a casual sale. Although the quantity of sales were minimal, each appears bona-fide. A single sale transaction, if in good faith and with future use expected, can sustain a trademark registration. Maternally Yours v. Your Maternity Shop, 234 F.2d 538 (2d Cir. 1956).

Minimal sales is especially understandable when viewed in the light of the customary practice of perfumers to "reserve" a name and to carry on trademark maintenance programs. Inherent within this practice is expected greater use of the name when fashion makes massive production profitable. Until that time minimal bona-fide use for the purpose of trademark protection is all the law requires. Nothing in the law requires a manufacturer to create a large fashion demand for his product when bona-fide use is otherwise present.

 Furthermore, the pendency of legal proceedings concerning the validity and registration of the SNOB mark for 13 years is a valid defense to Le Galion's claim of token use. *See, e. g.*, Carter-Wallace, Inc. v. Proctor & Gamble, Co., 434 F.2d 794 (9th Cir. 1970); Callman, *supra*, § 79.2 at 523.

In view of the foregoing, it is unnecessary to reach the defenses of laches and estoppel. It is our judgment that plaintiff is not entitled to the relief sought.

The foregoing constitutes the findings of fact and conclusions of law. Judgment will be entered in accordance therewith.